Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| JOSÉ Z. PABÓN DÍAZ **Recurrente** Vs. DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN **Recurrido** | KLRA202400383 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Departamento de Corrección y Rehabilitación Querella Núm. IVH-540-2024 SOBRE: Solicitud de Cambios de Tabla de Sentencia, por Ley 85 |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente.**

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de septiembre de 2024.

El 16 de julio de 2024, el Sr. José Pabón Díaz (señor Pabón Díaz o recurrente), miembro de la población correccional, compareció ante nos, *in forma pauperis*, mediante una revisión judicial intitulada *Moción en Certiorari* y solicitó la revisión de una *Resolución* que se emitió el 26 de junio de 2024 y se notificó el 28 de junio de 2024 por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR). Mediante el aludido dictamen, el DCR confirmó y modificó la *Respuesta del Área Concernida/Superintendente* que emitió el técnico de récord penal del DCR.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

I.

El 26 de abril de 2024, el señor Pabón Díaz presentó una *Solicitud de Remedio Administrativo Núm. ICG-54D-2024*.[1] En esencia, alegó que, cumplió con la sentencia que se le impuso por Ley de Armas en el año 2015. Sin embargo, sostuvo que el área de récord penal modificó su *Hoja de Control sobre Liquidación de Sentencia* al aplicarle la Ley Núm. 85-2022, intitulada *Ley Para Enmendar el Artículo 308 de la Ley Núm. 146 de 2012, Código Penal de Puerto Rico y la Ley Núm. 118 de 1974, Ley de la Junta de Libertad Bajo Palabra* (Ley Núm. 85-2022) y que ello tuvo el efecto de que se le ordenara a cumplir nuevamente con la sentencia antes mencionada.

Evaluada la solicitud del recurrente, el 30 de abril de 2024, el DCR presentó su *Respuesta del Área Concernida/Superintendente* en la cual resolvió lo siguiente:

> Según se desprende de su hoja de control sobre liquidación de sentencia a usted se le aplicó la Ley 85 por tal razón se elige la sentencia más alta y se le aplica el mínimo a la misma; consecuentemente la Ley de Armas pasa a secundaria.

Inconforme, el 22 de mayo de 2024, el recurrente presentó su *Solicitud de Reconsideración*. En síntesis, reiteró que había un error en su *Hoja de Control sobre Liquidación de Sentencia* ya que había cumplido la sentencia por Ley de Armas el 27 de diciembre de 2015 y no era posible que tuviese que cumplirla nuevamente. Así pues, solicitó que ello fuese corregido.

Luego de examinar los argumentos presentados por el recurrente, el 26 de junio de 2024, el DCR emitió una *Resolución*

---

[1] El recurrente no presentó los documentos pertinentes para evaluar el recurso. No obstante, el 21 de agosto de 2024, emitimos una *Resolución* en la cual ordenamos al DCR a presentar la Solicitud de Remedio Administrativo que presentó el recurrente, la Resolución del DCR en la cual declaró No Ha Lugar a dicha solicitud, la Solicitud de Reconsideración y la Resolución recurrida. De estos documentos formulamos los hechos procesales.

que se notificó el 28 de junio de 2024. En primer lugar, realizó las siguientes determinaciones de hechos:

1. El 12 de abril de 2024, el recurrente radicó escrito de solicitud de remedio administrativo. En su queja establece que el área de récord penal le cambie su tabla de sentencia, ya que cumplió la Ley de arma en el año 2015, que por aplicarle la ley 85 en la tabla de liquidación lo ponen a cumplir la ley de arma nuevamente.

2. El 26 de abril de 2024, el Sr. Henry Luna Bravo, Evaluador de la División de Remedios Administrativos de la oficina local de la Inst. Guerrero, Aguadilla, recibe, enumera, codifica y firma el recibo de la solicitud de Remedio Administrativo.

3. El 2 de mayo de 2024, el Sr. Henry Luna Bravo, Evaluador de la División de Remedios Administrativos de la Oficina local de la Inst. Guerrero, Aguadilla, le entrega recibo al MPC José Pabón Diaz, de que su solicitud de remedio que está en proceso de que el área concernida le contesté.

4. El 30 de abril de 2024, el Sr. Henry Luna Bravo, Evaluador de la División de Remedios Administrativos de la Oficina local de la Inst. Guerrero, Aguadilla recibe la contestación del área concernida, para entregársela al recurrente MPC José Pabón Diaz.

5. El Sr. Eduardo Carire Cuevas técnico de récord penal, de la Institución Guerrero Aguadilla, le expuso en su contestación, que se desprendía de su hoja de control sobre liquidación de sentencia, que al MPC José Pabón Diaz se le aplicó la Ley 85, que por tal razón se elige la sentencia más alta y se le aplica el mínimo a la misma, consecuente a la ley de arma que pasa secundaria.

6. El 2 de mayo de 2024, el Sr. Henry Luna Bravo, Evaluador de la División de Remedios Administrativos de la Oficina local de la Inst. Guerrero, Aguadilla, le entrega al recurrente respuesta del área concernida, remitida por la evaluadora.

7. El 8 de mayo de 2024, el recurrente inconforme con la respuesta presentó Solicitud de Reconsideración donde expreso las razones, que no está de acuerdo con la respuesta emitida por el técnico de récord el Sr. Eduardo Carire, ya que la tabla tiene un error en su tabla de sentencia el cual no han arreglado y desea que otra persona con experiencia le corrija el error.

8. Recibida la Solicitud de Reconsideración el 30 de mayo de 2024 y acogida el 13 de junio de 2024, por la Coordinadora Regional, Melissa Ruiz Sepúlveda, al ser acogida la solicitud de reconsideración, tendré (30) días laborables para emitir Resolución de reconsideración. Este terminó comenzará a transcurrir desde la fecha en que se emitió la respuesta de reconsideración al

miembro de la población correccional salvo que medie justa causa.

A su vez, el DCR indicó que se reunió con el Sr. Eduardo Carire Cuevas (señor Carire Cuevas), técnico de récord penal del DCR, y que este explicó que el recurrente tenía una liquidación de sentencia en la cual aparecía cumpliendo con la Ley de Armas. A base de las determinaciones de hechos formuladas y de la reunión con el señor Carire Cuevas, el DCR impartió nuevas directrices al personal de récord penal mediante las cuales ordenó a evaluar las liquidaciones de sentencia de los confinados y, que les aplicase la Ley Núm. 85-2022, *supra*. Aclaró que, dicha Ley le favorecía a ciertos confinados y a otros no. Por todo lo anterior, el DCR confirmó y modificó la respuesta recibida por parte del señor Carire Cuevas.

Aún inconforme, el 16 de julio de 2024, el recurrente presentó el recurso de epígrafe. En este no formuló ningún señalamiento de error. No obstante, de una lectura detenida del recurso entendemos que impugnó la aplicación de la Ley Núm. 85-2022 a su *Hoja de Control sobre Liquidación de Sentencia*. Planteó que, no debió aplicarse dicha Ley toda vez que no le favorecía en el cumplimiento de su sentencia. En específico, señaló que el 21 de agosto de 2012 fue sentenciado a cumplir 28 años de cárcel, tres (3) años por el Art. 5.04 de la Ley de Armas, *supra*, y veinticinco (25) años por el Art. 106 de la Ley Núm. 149-2004, intitulada *Código Penal del Estado Libre Asociado de Puerto Rico de 2004*, 33 LPRA sec. 4734. Esbozó, que tenía una *Hoja de Control sobre Liquidación de Sentencia*, la cual certificaba que había cumplido con la Ley de Armas el 27 de diciembre de 2015.

Atendido el recurso, el 4 de septiembre de 2024, emitimos una *Resolución* en la cual le concedimos al DCR hasta el 16 de septiembre de 2024, para presentar su alegato en oposición. Asimismo, ordenamos a que discutiese cual fue la modificación que

realizó el DCR en la *Resolución* que emitió el 26 de junio de 2024 y notificó el 28 de junio de 2024, respecto a la *Respuesta del Área Concernida/Superintendente.* Oportunamente, el DCR presentó su *Escrito en Cumplimiento de Resolución* en la cual aclaró que la *Resolución* del DCR modificó la *Respuesta del Área Concernida/Superintendente* a los fines de incluir el derecho aplicable a la controversia de epígrafe. No obstante, no se le realizó ningún cambio al dictamen recurrido. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nuestra consideración. *Veamos.*

## II.

### A-

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte.Policía,* 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Caldero López,* supra, pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. Íd.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág.128. Por lo tanto, al realizar nuestra función

revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd. Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

### -B-

La Ley Núm. 118 de 22 de junio de 1974, también conocida como *Ley de Libertad Bajo Palabra*, 4 LPRA sec. 1501 *et seq.* (Ley Núm. 118 o Junta) creó la Junta de Libertad Bajo Palabra. Particularmente, mediante el Art. 3 la Ley Núm. 118, 4 LPRA sec. 1503, se le autoriza a la Junta a "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales en Puerto Rico". La libertad bajo palabra es una herramienta mediante la cual se le permite a una persona convicta de algún delito cumplir su sentencia, o parte de ella, fuera de la institución penal. *Benítez Nieves v. ELA et al.*, 202 DPR 818 (2019). Ahora bien, la decisión de conceder o denegar los beneficios de la libertad bajo palabra descansa en la entera discreción de la Junta, por lo que no existe un derecho a obtener tal beneficio. *Maldonado Elías v. González Rivera*, 118 DPR 260, 275-276 (1987).

Cónsono con lo anterior, se aprobó la Ley Núm. 85–2022, *supra*, para enmendar el Art. 308 de la Ley Núm. 146-2012, también conocida como *Código Penal de Puerto Rico*, 33 LPRA sec. 5416. Ello, con el propósito de "establecer una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable". Asimismo, dicha Ley fue promulgada para cumplir con la política pública constitucional de la rehabilitación que debe traducirse en un andamiaje penal más humano en la implementación de las penas, pero sin obviar la responsabilidad de la persona ante el gobierno por sus acciones delictivas. *Exposición de Motivos* de la Ley Núm. 85-2022.

En lo pertinente, la Sección 1 de la Ley 85-2022 dispone lo siguiente:

> Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.

> En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.

> En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto. Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.

**En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos.** Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial."

Por su parte la Sección 5 de la Ley Núm. 85-2022 enmendó el Art. 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como *Ley de la Junta de Libertad Bajo Palabra*, para que lea como sigue:

(5) **En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos.** Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.

III.

El recurrente solicitó la revisión de una *Resolución* que se emitió el 26 de junio de 2024 y se notificó el 28 de junio de 2024, por el DCR. Mediante el aludido dictamen, el DCR confirmó y modificó la respuesta recibida por parte del señor Carire Cuevas, técnico de récord penal de la institución. En consecuencia, el DCR resolvió que al recurrente se le aplicó la Ley Núm. 85-2022, *supra*, por lo que se eligió la sentencia más alta y se le aplicó el mínimo a la misma. Así pues, la sentencia por la Ley de Armas pasó a secundaria. En vista de ello, el recurrente presentó el recurso de epígrafe y argumentó que cumplió con la sentencia que se le impuso por la Ley de Armas en el año 2015. No obstante, sostuvo que el área

de récord penal modificó su *Hoja de Control sobre Liquidación de Sentencia* al aplicarle la Ley Núm. 85-2022 *supra,* y que ello tuvo el efecto de que se le ordenara a cumplir nuevamente con la sentencia antes mencionada.

De entrada, cabe precisar que, este foro judicial tiene el deber de otorgarle amplia deferencia a las decisiones de las agencias administrativas. *Graciani Rodríguez v. Garaje Isla Verde,* supra, pág. 126. Ello, ya que estas poseen la experiencia y pericia para atender y resolver los asuntos que le han sido delegados. *Rolón Martínez v. Caldero López,* supra, pág. 35. Consecuentemente, al realizar nuestra función revisora, nos debemos limitar a evaluar si la agencia administrativa: (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesiono derechos constitucionales. *Torres Rivera v. Policía de PR,* supra, págs. 627-628.

Según la Ley Núm. 85-2022, *supra,* en aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. En apoyo a lo anterior, el 15 de junio de 2023, la Secretaria Auxiliar de Programas y Servicios del DCR emitió una Carta Circular Núm. 2023-02 estableciendo el procedimiento a seguir para el cumplimiento de la Ley Núm. 85-2022, *supra.*

Posteriormente, la Secretaria Auxiliar de Programas y Servicios del DCR emitió las *Nuevas Directrices sobre la Carta Circular Núm. 2023-02* de 11 de octubre de 2023, en la cual implementó un nuevo esquema para computar el momento en que un confinado cumplía el mínimo de sentencia de la pena más larga para ser elegible para el privilegio de libertad bajo palabra. En específico, estableció lo siguiente:

1. Verificarán todos los expedientes criminales de toda la población correccional.

2. Evaluarán el documento titulado "Hoja de Control sobre Liquidación de Sentencias". De observar más de un término computado, identificarán la sentencia base mayor.

3. Tomarán en cuenta las sentencias de manera individual. Las sentencias que son consecutivas no deberán estar consolidadas en la nueva revisión. De estar consolidadas, el resultado conllevaría a identificar una pena mayor que no necesariamente sea la correcta para el cómputo final a los fines requeridos por la ley.

4. Los nuevos cómputos se harán en una nueva "Hoja de Control sobre Liquidación de Sentencia", la cual se identificará como una "Reliquidación".

5. Si la pena mayor resultara ser de un hecho ocurrido estando en una alternativa de reclusión, el término en el que comenzará a cumplir el mínimo de esa pena mayor se computará a partir del cumplimiento del remanente de la pena revocada.

6. En virtud de lo anterior, en la nueva "Hoja de Control sobre Liquidación de Sentencia", identificarán la pena mayor y se observará el mínimo de esa sentencia. En el caso de que el mínimo sea mayor de 15 años, se atemperará a 15 años, salvo en los casos sentenciados por asesinato en primer grado, que el mínimo será de 25 años naturales.

7. Computarán en primer orden la pena mayor con el mínimo. Cuando el mínimo de la pena mayor sea menor de 15 años, no se efectuará cómputo adicional. Solo se pondrá en primer orden.

8. Adjudicarán las bonificaciones adicionales al nuevo cómputo en el máximo y en el mínimo, exceptuando los casos de asesinato en primer grado, que solo bonifican en el máximo.

9. Si el delito de la pena mayor (primer orden) excluye las bonificaciones adicionales, no podrán ser acreditadas, aunque el confinado tenga tiempo adjudicado por concepto de trabajo y/o estudios.

10. Computarán los demás términos de las sentencias consecutivas en el mismo orden de la hoja de liquidación anterior y no se computarán mínimos adicionales.

11. Se considerará y documentará solamente un mínimo, el cual responderá a la pena mayor.

12. Los delitos cumplidos en su totalidad permanecerán en la nueva "Hoja de Control sobre Liquidación de Sentencias". Por ejemplo, en los casos de asesinato en primer grado cometidos con armas,

se computará en primer orden el asesinato en primer grado con el mínimo establecido, beneficiándolo del tiempo en reclusión preventiva. Luego, se incluirán y computarán los demás delitos de la sentencia, incluyendo los de armas. [...]. (Énfasis suplido).

El expediente ante nos refleja que, previo a la aprobación de la Ley Núm. 85-2022, *supra*, el DCR le notificó al recurrente dos hojas de liquidación de sentencia. La *Hoja de Control de Liquidación de Sentencia* de 25 de agosto de 2014 indicaba lo siguiente: (1) máximo de Ley de Armas -27 de diciembre de 2015; (2) Mínimo de Ley de Armas-3 de febrero de 2015 (cumplido); (3) Máximo de Sentencia larga-18 de octubre de 2040 tras bonificaciones calculadas; (4) Mínimo de Sentencia larga -24 de noviembre de 2034, tras bonificaciones calculadas. En dicha Hoja, la sentencia de Ley de Armas ocupaba la primera posición, seguida por la sentencia larga del Art. 106 del Código Penal de 2004, 33 LPRA sec. 4734. La Hoja también demostraba que, se había cumplido el mínimo de la sentencia de la Ley de Armas, y se cumplía el resto de esa sentencia el 27 de diciembre de 2015.

Por su parte, la *Hoja de Control de Liquidación de Sentencia* del 5 de marzo de 2019 indicaba lo siguiente: (1) Máximo de Ley de Armas- 27 de diciembre de 2015; (2) Mínimo de Ley de Armas- 3 de febrero de 2015 (cumplido) (3) Máximo de Sentencia larga- 3 de julio de 2040, tras bonificaciones calculadas, y (4) Mínimo de Sentencia larga- 9 de mayo de 2033, tras bonificaciones calculadas. Esta Hoja especificó que al recurrente se le aplicaba el 75% al mínimo de la sentencia del asesinato en segundo grado (18 meses y meses) conforme el Código Penal de 2012, 33 LPRA sec. 5001. Nótese la reducción del término del máximo entre ambas Hojas de noviembre de año 2034 a mayo del año 2033, ello, debido a las bonificaciones calculadas bajo la sentencia larga.

Con la aprobación de la Ley Núm. 85-2022, *supra*, el DCR entregó una nueva *Hoja de Control de Liquidación de Sentencia* al

recurrente. Esta Hoja contenía la información siguiente: (1) Mínimo (único mínimo de la Hoja) de la Sentencia larga -28 de julio de 2024, tras bonificaciones; (2) Máximo de la Sentencia larga - 16 de enero de 2034, tras las bonificaciones, y (3) Máximo de la Sentencia de la Ley de Armas - 16 de enero de 2034 tras bonificaciones calculadas. En esta, especificó que dejaba sin efecto la liquidación anterior, toda vez que aplicó la Ley Núm. 85-2022, *supra*.

Inconforme, el recurrente presentó su *Solicitud de Remedio Administrativo Núm. ICG-54D-2024*. Mediante esta, adujo que alegó que, cumplió con la sentencia que se le impuso por Ley de Armas en el año 2015. Sin embargo, sostuvo que el área de récord penal modificó su *Hoja de Control sobre Liquidación de Sentencia* al aplicarle la Ley Núm. 85-2022, y que ello tuvo el efecto de que se le ordenara a cumplir nuevamente con la sentencia antes mencionada. En respuesta, el DCR determinó que le aplicó la Ley Núm. 85-2022, *supra*, por lo que eligió la sentencia más alta y le aplicó el mínimo a la misma. Consecuentemente la Ley de Armas pasó a secundaria. Inconforme, el recurrente presentó su *Solicitud de Reconsideración* en la cual reiteró sus planteamientos. Por su parte, el DCR emitió una *Resolución* que se notificó el 28 de junio de 2024, en la cual confirmó y modificó la determinación de *Respuesta del Área Concernida/Superintendente*.

Según surge del expediente ante nuestra consideración, la *Hoja de Control de Liquidación de Sentencia* que se emitió el 5 de enero de 2022, se realizó según las instrucciones de la *Carta Circular Núm. 2023-02* y la Ley Núm. 85-2022, *supra*. Es decir, en dicha hoja primero aparecía la sentencia más larga únicamente con un mínimo de esta y, luego la sentencia por Ley de Armas en segundo orden. De igual forma, cabe precisar que no se le está sumando la sentencia por Ley de Armas nuevamente, ya que dicha sentencia se cumplió el 27 de diciembre de 2015. Por tanto, no le asiste la razón al

recurrente, cuando aduce que se le está imponiendo la sentencia por Ley de Armas nuevamente.

Por otra parte, resulta necesario señalar que el recurrente resultaba favorecido al aplicarle la Ley Núm. 85-2022, *supra.* Nótese, que la *Hoja de Control de Liquidación de Sentencia* que se emitió el 5 de enero de 2022, disponía que este era elegible para ser evaluado por la Junta de Libertad Bajo Palabra el 28 de julio de 2024. Dicho término ya fue cumplido. Por ello, reiteramos, que lo anterior, resulta en un escenario más favorable para el recurrente y no se le está imponiendo una nueva sentencia por Ley de Armas. Asimismo, aclaramos que la sentencia impuesta al recurrente era de veintiocho (28) años y, este empezó a cumplir la misma el 21 de agosto de 2014. Por tanto, al sumar la pena impuesta, el máximo de su sentencia no sería en el 2034. Así pues, es evidente que la aplicación de la Ley Núm. 85-2022, *supra,* es correcta y más beneficiosa para el recurrente.

Por último, aclaramos que la *Resolución* del DCR modificó la *Respuesta del Área Concernida/Superintendente* a los fines de incluir el derecho aplicable a la controversia de epígrafe. No obstante, no se le realizó ningún cambio al dictamen recurrido.

Luego de realizar nuestra función revisora tomando en cuenta los criterios esbozados en *Torres Rivera v. Policía de PR*, supra, págs. 627-628 no encontramos que el DCR haya sido arbitrario o haya tomado una determinación irrazonable o ilegal. Tampoco consideramos que ésta haya cometido un error en la interpretación o la aplicación de la Ley Núm. 85-2022, *supra.* Por su parte, el recurrente tampoco presentó evidencia suficiente que rebatiera la presunción de legalidad y corrección de la determinación del DCR. En vista de ello, tenemos el deber de validar la determinación realizada por el DCR. Asimismo, no corresponde variar la interpretación del DCR, toda vez que son ellos los que poseen la

pericia para realizar los cómputos de liquidación de sentencias. Consecuentemente, colegimos que dicho organismo administrativo no cometió ningún error al realizar su determinación.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones